IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(c)(1)(A) AND 3122(a)(2) FOR THE<br><br>(1) DISCLOSURE OF PROSPECTIVE CELL-SITE DATA AND E-911 PHASE II DATA;<br><br>(2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS; AND<br><br>(3) INSTALLATION OF A PEN REGISTER/TRAP AND TRACEDEVICE; AND<br><br>(4) USE OF A CELL SITE SIMULATOR TO LOCATE THE TARGET CELL PHONE<br><br>ON 410-949-7970 | Case No. 3:21-mj-00057<br><br><u>Filed Under Seal</u> |

AFFIDAVIT IN SUPPORT OF
<u>AN APPLICATION FOR A SEARCH WARRANT</u>

I, Jeremy Thompson, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an Application for a Search Warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 18 U.S.C. § 3122 for information associated with a cellular device assigned with the telephone number 410-949-7970 ("TARGET CELL PHONE"), which is serviced by Verizon ("TELEPHONE SERVICE PROVIDER"). As a provider of wireless communications service, the TELEPHONE SERVICE PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. I also submit this affidavit in support of an application for a Search Warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, described in Attachment B-2, to determine the location of the TARGET CELL PHONE. The investigative technique described in Attachment B-2 involves the use of a Cell Site Simulator ("CSS").

3. I am an "West Virginia State law enforcement officer" and therefore, pursuant to Section 3122 of Title 18, United States Code, may apply for an order authorizing the installation and use of a pen register and a trap and trace device (including caller identification/caller identification deluxe feature.)

4. Because the warrant seeks the prospective collection of information, including cell site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4) ("pen/trap device"), the requested warrant is designed also to comply with the Pen Register Act, see 18 U.S.C. §§ 3121– 3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

5. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an Application for Search Warrant under 18 U.S.C. § 2703(c)(1)(A), 18 U.S.C. § 3122 and Federal Rule of Criminal Procedure 41 to require the TELEPHONE SERVICE PROVIDER to disclose to the government the information further described in Section I of Attachment B-1. Upon receipt of the information described in Section I of Attachment B-1, government-authorized persons will review the information to locate items described in Section II of Attachment B-1.

6. Investigators believe Abdul Inusah ("INUSAH") is the user of the TARGET CELL PHONE because of texts and calls that law enforcement received after texting the TARGET CELL PHONE during the period of May 26 – 27, 2021 which will be further

explained in the Probable Cause Section.

7. I am a duly sworn police officer with the City of South Charleston, WV since May 2011, and have been assigned as a Task Force Officer with the United States Secret Service (USSS) in Charleston, WV since December 2017. My investigative duties focus primarily on conducting criminal investigations involving forgery, bank fraud, false loan applications, wire fraud, credit card fraud, false identification, romance frauds, financial elder abuse investigations, money laundering investigations, identity theft and other financial crime investigations.

8. I received 16 weeks of training at the West Virginia State Police Academy, which centered on criminal investigations including financial crimes. I have also learned how to investigate violations of the laws of the United States relating to electronic fund transfer frauds, specifically 18 U.S.C. §§ 1341, 1343, 1956, 1957 and 2315.

9. I have participated in the debriefing of defendants, as well as interviews of witnesses and victims. From my prior investigative experience and trainings, I have also learned various methods of operation of common fraud schemes, including online fraud schemes, how operators of fraud schemes structure financial transactions to avoid law enforcement and launder proceeds, among other concerns related to fraud and money laundering schemes. I have discussed and learned from other law enforcement investigators about these matters as well.

10. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11. Based on the facts set forth in this affidavit, there is probable cause to believe that criminal violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1349 (conspiracy to commit mail/wire fraud), 18 U.S.C. § 1956-1957 (money laundering) and 18 U.S.C. § 2315 (receipt of stolen property) (collectively, the "Target

Offenses"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and contraband of these crimes as further described in Attachment B-1. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i).

12. The United States, including the Secret Service, is conducting a criminal investigation of INUSAH regarding possible violations of the Target Offenses.

13. The Secret Service is currently conducting a criminal investigation of INUSAH. On April 28, 2021, INUSAH was indicted in the Southern District of West Virginia on charges of wire fraud and receipt of stolen property, in violation of 18 U.S.C. § 1343 and 2315 respectively. *See* 3:21-cr-00070. That same day, the Honorable Dwane L. Tinsley, United States Magistrate Judge for the Southern District of West Virginia issued an arrest warrant for INUSAH.

14. INSUAH was charged with crimes carried out by computers and electronic devices. Based on the victim interviews and financial records reviewed during this investigation, there is probable cause to believe that INUSAH is involved in a fraud scheme which regularly used email, text messaging and other electronic and Internet based methods of communication as well as money transfers.

15. To date, officers have been unable to locate INUSAH to effectuate the arrest warrant in Case No. 3:21-cr-00070.

16. Law enforcement learned of the existence of the TARGET CELL PHONE through the course of the investigation. Although the subscriber information of the TARGET CELL PHONE is unknown at this time, law enforcement officers believe that INUSAH is the user of the TARGET CELL PHONE because Terry Hedrick, a Special Agent with the Secret

Service, texted INUSAH via the TARGET CELL PHONE on May 26, 2021.

17. After Agent Hedrick texted the TARGET CELL PHONE, Agent Hedrick received a call from a Huntington attorney who claimed that INUSAH had contacted him seek representation but, that the Huntington attorney did not generally undertake federal criminal work and would be referring INUSAH to one of his associates.

18. Agent Hedrick was then contacted by another Huntington lawyer who claimed that he was considering representing INUSAH, but Agent Hedrick later learned that the second Huntington lawyer later declined to represent INUSAH.

19. Based on the contact from the Huntington lawyers and the fact that Agent Hedrick's text was "read" by the user of the TARGET CELL PHONE as shown by the read receipt of the text message below, there is probable cause to believe that INUSAH is the user of the TARGET CELL PHONE.



20. Based on my training and experience, a court order to obtain precision location information on the TARGET CELL PHONE will assist investigators in locating

Case 3:21-mj-00057   Document 5-1   Filed 06/09/21   Page 6 of 12 PageID #: 20

INUSAH to effect his arrest.

21. On June 1, 2021, the Honorable Cheryl A. Eifert, United States Magistrate Judge for the Southern District of West Virginia signed a Search and Seizure Warrant in Case 3:21-mj-00055 directing Verizon to provide Geolocation Information for the TARGET CELL PHONE (the "Geolocation Search Warrant"). Verizon has supplied that information and the ping information from Verizon shows that the TARGET CELL PHONE is located in the Southern District of West Virginia. Specifically, law enforcement received location data for the Target Cell Phone and learned that the Target Cell Phone traveled from Newark, New Jersey to Baltimore, Maryland to Charlottesville, Virginia back to an area located outside of Charleston, West Virginia. However, the information provided by Verizon is not precise enough to allow agents to identify the exact location of the TARGET CELL PHONE to effectuate an arrest of INUSAH.

22. This Affiant has received immigration information related to INUSAH and has believes that INUSAH does not have legal status to be in the country at this time and may be subject to deportation.

23. As INUSAH has known about the warrant for his arrest for over two weeks now and has not made plans to self-surrender to authorities, he is considered a fugitive. Thus, law enforcement is seeking to arrest INUSAH as quickly as possible because he is a flight risk as he is a foreign national who does not have legal status to be in the country at this time.

24. Based on my training and experience, a court order to obtain precision location information on the TARGET CELL PHONE will assist investigators in locating INUSAH to effect his arrest.

25. Also, in my training and experience, historical cell site information can be helpful to establish a pattern of movement for INUSAH, which would allow investigators to learn where INUSAH typically spends time and help law enforcement effect INUSAH's arrest.

## APPLICABLE CELLULAR TECHNOLOGY

26. In my training and experience, I have learned that the TELEPHONE SERVICE PROVIDER is a company that provides cellular communications service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information: (1) about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data; and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

27. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect E-911 Phase II data about the location of the TARGET CELL PHONE, including by initiating a signal to determine the location of the TARGET CELL PHONE on TELEPHONE SERVICE PROVIDER's network or with such other reference points as may be reasonably available.

28. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect cell-site data about the TARGET CELL PHONE. Based on my training and experience, I know that for each communication a cellular device makes, its

wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as TELEPHONE SERVICE PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

29. Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen/trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

30. Based on my training and experience, I know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other

transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET CELL PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

31. To facilitate execution of the requested CSS warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the TARGET CELL PHONE or receiving signals from nearby cellular devices, including the TARGET CELL PHONE. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the TARGET CELL PHONE and thereby prompt it to send signals that include the unique identifiers of the device. Law enforcement may monitor the signals broadcast by the TARGET CELL PHONE and use that information to determine the TARGET CELL PHONE's location, even if it is located inside a house, apartment, or other building.

32. The investigative device may interrupt cellular service of phone or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the TARGET CELL PHONE, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the TARGET CELL PHONE, and law enforcement will limit collection of information from devices other than the TARGET CELL PHONE. To the extent that any information from a cellular device other than the TARGET CELL PHONE is collected by the law enforcement device, law enforcement will delete that information and will make no investigative use of it absent further order of the court, other than distinguishing the TARGET CELL PHONE from

all other cellular devices. The Secret Service considers further details than those stated immediately above about CSS technology to be law enforcement sensitive; that is, disclosure of those details could be used by adversaries of law enforcement to thwart law enforcement efforts.

33. The execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

## AUTHORIZATION REQUEST

34. Based on the foregoing, I request that the Court issue the proposed Search Warrant and orders, pursuant to 18 U.S.C. § 2703(c), 18 U.S.C. § 3122 and Federal Rule of Criminal Procedure 41.

35. I also request that the Court direct the specified electronic service providers to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-1 unobtrusively and with a minimum of interference with services, including by initiating signals to determine the location of the TARGET CELL PHONE on their respective networks, and at such intervals and times as directed by the government. The government will compensate the electronic service providers for reasonable expenses incurred in furnishing such facilities or assistance.

36. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation,

as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B-1, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

37. I further request that the Court direct the TELEPHONE SERVICE PROVIDER to disclose to the government any information described in Attachment B-1 that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER. I also request that the Court direct the TELEPHONE SERVICE PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-1 unobtrusively and with a minimum of interference with services of the TELEPHONE SERVICE PROVIDER, including by initiating a signal to determine the location of the TARGET CELL PHONE on the network of the TELEPHONE SERVICE PROVIDER or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the TELEPHONE SERVICE PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

38. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

Respectfully submitted,

*[signature]*

JEREMY THOMPSON
TASK FORCE OFFICER
UNITED STATES SECRET SERVICE


Subscribed and sworn-to by the Affiant telephonically in accordance with the procedures of Rule 4.1 of the Federal Rules of Criminal Procedure, on __June 9__, 2021.

*[signature]*

CHERYL A. EIFERT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA